JUDE G. GRAVOIS, Judge.
12Pefendant, Herman Perry, appeals his conviction and sentence for theft of goods valued at over $1,500.00. Specifically, he seeks review of the amount of restitution *770 set as part of his sentence. For the reasons that follow, we affirm defendant’s conviction and sentence, except that we vacate the trial court’s restitution order and remand the matter for further proceedings consistent with this opinion.

PROCEDURAL HISTORY

On April 2, 2013, the Jefferson Parish District Attorney’s Office filed a bill of information charging defendant, Herman Perry, with theft of U.S. Currency, valued at greater than $1,000.00, from the Belmont Apartments, in violation of La. R.S. 14:67. On November 25, 2013, defendant was arraigned and entered a plea of not guilty to the charge. On July 21, 2014, the bill of information was amended to theft of U.S. Currency, valued at greater than $1,500.00, from the Belmont Apartments, in violation of La. R.S. 14:67.
|sOn July 28, 2014, defendant pled guilty under a plea agreement to the amended charge of violating La. R.S. 14:67 (theft of over $1,500.00). Pursuant to the plea . agreement, the State did not file a multiple offender bill of information against defendant. Also, it was made clear to defendant during the guilty plea colloquy that as part of the plea agreement, he would be required to pay restitution to the victim in an amount to be determined by the court following a restitution hearing. Defendant was then sentenced, pursuant to the agreement, to imprisonment at hard labor for a term of two years.[1]
Immediately after- defendant’s guilty plea was accepted and his sentence was imposed, the trial court conducted a restitution hearing. Following testimony from two witnesses, the court set defendant’s restitution amount at $15,200.00, to be paid in accordance with a payment schedule filed in the record. Defense counsel orally objected to the amount of restitution as determined by the trial court, which objection was overruled by the trial court and noted for the record. Defendant subsequently filed a motion for reconsideration of the restitution portion of his sentence, arguing that the State “failed to prove the actual amount of pecuniary loss,” which motion was denied on August 4, 2014. On August 11, 2014, defendant filed a motion for an appeal, which was granted on August 18, 2014.

FACTS

Defendant pled guilty without proceeding to trial. As such, the details of the facts surrounding the offense are not fully developed in the appellate record. The bill of information provides the facts, as does the guilty plea colloquy, during which the State provided the following factual basis for the plea: on or about January 16, 2013, defendant committed theft of U.S. Currency, valued at greater than $1,500.00, from the Belmont Apartments, in violation of La. R.S. 14:67.

\ ¿ASSIGNMENT OF ERROR

Restitution amount

In his only assignment of error, defendant argues that the trial court’s order of restitution in the amount of $15,200.00 was an abuse of discretion and resulted in an excessive sentence, because the restitution figure was based upon “general estimates” made by the witnesses, rather than upon “definitive proof of pecuniary loss,” such as through an invoice, bill of sale, itemized bid, or proof of payment.
Both the Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution gov *771 ern whether a sentence is unconstitutionally excessive and therefore invalid. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Nguyen, 06-969 (La.App. 5 Cir. 4/24/07), 958 So.2d 61, 64, writ denied, 07-1161 (La.12/7/07), 969 So.2d 628. Furthermore, a sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Lawson, 04-334 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622; State v. Guzman, 99-1528 (La.5/16/00), 769 So.2d 1158, 1167. Although a sentence is within the statutory limits, it can be reviewed for unconstitu--tional excessiveness. State v. Petty, 12-278 (La.App. 5 Cir. 10/30/12), 103 So.3d 616, 625.
Louisiana Code of Criminal Procedure article 883.2(A), dealing with restitution to a victim in a criminal case, provides:
In all cases in which the court finds an actual pecuniary loss to a victim, or in any case where the court finds that costs have been incurred by the victim in connection with a criminal prosecution, the trial court shall order the defendant to provide restitution to the victim as a part of any sentence that the court shall impose.
(Emphasis added.)
|BIn ordering restitution, the trial judge has discretion, and his decision will not be disturbed absent an abuse of that discretion. State v. Blanchard, 03-612 (La.App. 5 Cir. 11/12/03), 861 So.2d 657, 668. In reviewing excessive sentence assignments, the sentence imposed will not be set aside absent a showing of manifest abuse of the trial court’s wide discretion. Id.
When determining restitution, sources of information to which a sentencing court may look include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay. State v. McDonald, 33,356 (La.App. 2 Cir. 6/21/00), 766 So.2d 591, 594. See also State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218, 219. Further, the owner of stolen property may testify regarding the value of the stolen items without the necessity of being qualified as an expert, and such testimony “can constitute ample evidence of the property’s value.” State v. Castillo, 13-552, (La.App. 5 Cir. 10/29/14) 167 So.3d 624, 651, 2014 WL 5463045, at *18; State v. Davis, 569 So.2d 131, 135 (La.App. 5 Cir.1990). Because restitution cannot always be determined with exactitude, the trial court is given discretion in determining the amount of restitution appropriate under the particular circumstances of a given case. McDonald, supra.
At the restitution hearing conducted in the present case, Chris Centineo, director of construction and maintenance for Property One, a property management firm from Metairie, Louisiana, testified that his firm managed the Belmont Apartments. He became aware of some damage to air-conditioning condenser units that took place around January 16, 2013. He was told that the units “appeared to be vandalized.” These were new condenser units that had been recently installed during a fire renovation. He was also told there were eight damaged units. He first received an estimate from “Help Air Conditioning” and then went about making the repairs in “some different ways,” as the property was | fi“cash strapped.” He testified that “in some cases, we would replace it with a new condenser ..., in some cases, we would rob Peter to pay Paul from somewhere else on the property with new *772 condensers that were installed in building D.” He also stated that he was told that Property One paid “around $18,000.00” to make the total repairs. He testified that the majority, “if not all of the repairs were made by Help Air.”
On cross-examination, Mr. Centineo testified that he was the one who made the final decision to replace rather than repair the condensers. He testified that Help Air got paid by submitting invoices to Property One’s accounting division, but he did not have copies of those invoices at the hearing. He also testified, in response to the court’s questions, that he personally observed the- damage to the air-conditioning units, which consisted of removal of the condeqser coils from the units. Considering the damage, he stated that simply buying new condenser units made more financial sense than replacing the stolen coils. Noteworthy, at the restitution hearing, Mr. Centineo did not provide the court with copies of any invoices, nor with any proof of payment by Property One to Help Air, or anyone else for that matter, for the replacement condenser units and the installation thereof.
Kenny Knobloch, owner and president of Help Air Conditioning and Heating, a company that installs and repairs residential and light commercial air-conditioning and heating units, testified that he prepared a “proposal” for Property One of the estimated cost and weight of a “condenser coil” at the Belmont Apartments. He testified that “one condenser coil” would cost between $2,000.00 and $2,200.00, “depending on the tonnage.” He testified that his company would have had to repair approximately seven or eight condenser coils at the Belmont Apartments, for a total price of “somewhere around $17,600.00, $17,800.00 17something like that.” He agreed that it was best to replace the entire condenser units, rather than just the stolen condenser coils.
Upon examination by the court, Mr. Knobloch stated that in this instance, Property One furnished the units and his company supplied “the Freon and sorter [sic], and the labor material [sic] to put them in.” He explained that “[Property One has] an account where ... they can buy them, and they actually save a few dollars on that.”
On cross-examination, Mr. Knobloch admitted that he did not bring to the restitution hearing any copies of invoices for the condenser replacement work done by Help Air at the Belmont Apartments, although he indicated that his company’s business records would reflect how many condensers were actually replaced and invoice amounts for the work done at the Belmont Apartments.
At the conclusion of the hearing,' after entertaining argument of counsel, the court set defendant’s restitution amount at $1,900.00 per unit, or $15,200.00, which was $2,400.00 less than the amount of restitution requested by the victim. The court explained that its final determination was based on the fact that because there was testimony that “[Property One] didn’t pay Help [Air] to actually repair each of the units fully, ... they may have actually obtained the units at a slight discount and had them installfed].”
Upon review, we find that the trial court abused its discretion in setting defendant’s restitution amount at $15,200.00. As noted above, La. C.Cr.P. art. 888.2(A) requires the court to find an “actual pecuniary loss” in determining the amount of restitution to be paid to the victim. Considering the evidence presented at the restitution hearing, it appears that Property One purchased replacement condenser units on its own, and Help Air conducted the actual replacement of the condenser units. *773 Though Mr. Centineo of Property One was told the repairs totaled [¿‘around $18,000.00,” he was unable at the hearing to supply the court with copies of any invoices for the cost of the replacement condenser units, or of any payments made by Property One to Help Air or anyone else for the replacement condenser units and the installation thereof.
Further, although Mr. Knobloch estimated that Help Air repaired “seven or eight” condenser coils at the Belmont Apartments, for a price of “somewhere around $17,600.00, $17,800.00 something like that,” he too was unable to supply the court with any copies of the invoices for the condenser unit replacement work his company did at the Belmont Apartments.
The only documentation introduced at the restitution hearing was a “Proposal” from Help Air for the following:
The cost to replace 1 — condenser coil on existing unit. Approx [sic] $2000.00 to $2200.00. The weight of a condenser coil is 20 to 30 lbs. per coil.
This “Proposal” from Help Air as to the cost to replace one condenser coil on an existing unit falls far short of proving the total amount actually paid by Property One for the replacement/repairs to the condenser units in question. Further, the record does not reflect that under the particular facts and circumstances of this case, the amount of restitution due the victim herein cannot be determined to a greater degree of exactitude than that found by the trial court. McDonald, supra.
Accordingly, under the particular facts and circumstances of this case, because of the speculative nature of the testimony and documentation presented at the restitution hearing, we find that the State failed to present sufficient proof that the “actual pecuniary loss” sustained by the victim in this case was $15,200.00. As such, we find that the trial court abused its discretion in setting defendant’s restitution amount at $15,200.00. Accordingly, we find defendant’s sentence to be unconstitutionally excessive with respect to the restitution amount determined by |9the trial court. We therefore vacate the trial court’s restitution order and remand the matter for further proceedings consistent with this opinion.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). No patent errors requiring correction were found.

CONCLUSION

For the foregoing reasons, defendant’s conviction and sentence are affirmed, except that the trial court’s restitution order is vacated, and the matter is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; RESTITUTION ORDER VACATED; REMANDED

. As part of his sentence, defendant was also assessed with a $45.00 fee to the Public Defender’s Office and a $150.00 fee to the Sheriff’s Office.